## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE ZEIGLER, | ) | |
| Plaintiff, | ) | Civil Action No. 11-203Erie |
| | ) | |
| v. | ) | |
| | ) | |
| PHS CORRECTIONAL HEALTH | ) | |
| CARE, INC., et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

**M.J. Susan Paradise Baxter**


     This civil action was filed in this Court on September 14, 2011.  Plaintiff, through his

counsel, brought this civil rights action under 42 U.S.C. § 1983[2] alleging that his constitutional

rights were violated during his incarceration at SCI Albion.  Named as Defendants are: PHS

Correctional Health Care, Inc.; Daniel Telega; Tammy Mowery; Maxine Overton, Dr. Mark

Baker; and John Doe-Medical Personnel.  Plaintiff alleges that Defendants failed to provide him

with adequate medical care in violation of his Eighth and Fourteenth Amendment rights.

Further, Plaintiff alleges that Defendants PHS, Overton, and Baker failed to train and supervise

the other named Defendants.

     Defendant Overton is represented by the Attorney General's Office, while the remaining

named Defendants are represented by private counsel.  Defendants PHS and Telega, Defendants

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily
consented to have a United States Magistrate Judge conduct proceedings in this case, including
the entry of a final judgment.  See ECF Nos. 25, 28, and 29.

[2]  Plaintiff does not raise a medical malpractice claim under state law.  See ECF No. 27, page 17.

Mowery and Baker, and Defendant Overton have each filed a motion to dismiss.  See ECF No. 7, 11, and 19.  Plaintiff has filed a brief in opposition to the pending dispositive motion.  ECF Nos. 21-24, 26-27.   The issues are fully briefed and are ripe for disposition by this Court.

### A.  Standard of Review - Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.

2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

## B.  Plaintiff's Allegations

In his complaint, Plaintiff alleges that on July 5, 2009, he injured his lower left leg while playing basketball.  Plaintiff heard a pop and felt severe pain.  ECF No. 1, ¶ 12.  Plaintiff went to the medical department where he was seen by Defendant John Doe and given an ice pack, Motrin, and crutches.  Id. at ¶ 14.  The following day, Plaintiff saw Defendant Telega to whom

he described the injury, how it occurred, and the popping sound.  Telega diagnosed Plaintiff with a muscle strain.  Id. at ¶ 16.

Over the next several weeks, Plaintiff continued to suffer severe pain, walking with a limp, his left foot discolored, and with a bulge on his Achilles tendon.  Id. at ¶ 17.

On July 28, 2009, Plaintiff saw Defendant Mowery and complained that he had been misdiagnosed.  Plaintiff claims he tried to describe his condition to her, but that she cut him off making a sarcastic comment about his injury.  Id. at ¶¶ 18, 19.  Mowery denied that the injury could be a torn ligament or tendon and told Plaintiff she did not like his attitude and refused to further treat him.  Id. at ¶ 20.

Plaintiff's injury did not improve and he continued to be in pain.  Id. at ¶ 22.  Around August 24, 2009, Plaintiff was transported to the Lawrence County Prison for a court hearing. Id. at ¶ 23.  While there, Plaintiff saw a physician for the first time since his injury on July 5th. Id. at ¶ 25.  The physician explained that he believed Plaintiff has ruptured his Achilles tendon. The physician ordered x-rays and explained that Plaintiff needed an MRI, as well as an exam by a specialist.  Id. at ¶ 26.

Plaintiff was returned to SCI Albion without the MRI or specialist exam.  Around September 21, 2009, Plaintiff submitted an inmate request to Defendant Mowery indicating that the physician in the county jail believed his injury was an Achilles tendon rupture.  Plaintiff requested an exam by a specialist.  Id. at ¶ 28.

On October 10, 2009, Plaintiff was examined by Defendant Telega.  Id. at ¶ 32.  Plaintiff related his experience with the doctor in the Lawrence County jail.  Telega responded that the reason Plaintiff was not healed was because he was not using his crutches.  Id. at ¶ 33.  Telega examined Plaintiff indicating that there was no problem with the Achilles tendon, and ordered an

x-ray.  Id. at ¶ 34.  Plaintiff requested a consultation with a specialist.  Id. at ¶ 36.  Telega told Plaintiff to come back in two weeks.  Id. at ¶ 37.

On October 26, 2009, Plaintiff saw Telega and was scheduled to see a specialist.  Id. at ¶ 39.  On November 4, 2009, Plaintiff consulted an orthopedic specialist via webcam.  The specialist diagnosed Plaintiff with a ruptured Achilles tendon and recommended an MRI and surgery.  Id. at ¶ 40.  On November 16, 2009, Plaintiff was scheduled to leave SCI Albion the following day for the MRI, but the MRI was canceled by the provider.  Id. at ¶ 41.

On December 8, 2009, Plaintiff was transported to an MRI clinic but the appointment was cancelled due to a broken MRI machine.  Id. at ¶ 43.  On December 24, 2009, Plaintiff underwent an MRI.  Id. at ¶ 45.  On January 22, 2010, Plaintiff had a consult with the orthopedic specialist via webcam.  The specialist told Plaintiff that the MRI was not clear due to the formation of scar tissue due to the lapse of time.  The specialist recommended Plaintiff for surgery.  Id. at ¶ 54.

On January 29, 2010, Plaintiff saw Defendant Dr. Baker who informed him that the recommendation for surgery had been denied because Plaintiff would be maxing out shortly and released from prison.  Id. at ¶ 55.  Plaintiff claims that he has suffered "severe pain, suffering, discomfort and disfigurement" as a result of Defendants' deliberate indifference.  Id. at ¶ 69.

Further, Plaintiff alleges that Defendants PHS, Overton, and Baker failed to properly train, supervise and instruct those in their employ and "condoned the acts of the [other] Defendants," "failed to implement policies to curtail or remedy those act, adopted and maintained a policy, practice and custom for such acts; and deliberately, knowingly and/or negligently failed to provide proper training, supervision and control of the Defendants in their employ, control, and/or command."  Id. at ¶ 73.

**C.  Deliberate indifference under the Eighth Amendment[3]**

Defendants argue that Plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs.  Estelle v. Gamble, 429 U.S. 97 (1976).  The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious."  West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A serious medical need may arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss."  Peterson v. Achebe, 2007 WL 1381753, at *3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104. Such indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent

---

[3]  Plaintiff alleges that Defendants violated his constitutional rights under both the Eighth and Fourteenth Amendments.  Where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment."  Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989).  Accordingly, this Court need not conduct a separate due process analysis as to the identical factual allegations.

conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F .2d 533, 575 n. 2 (3d Cir.1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Peirce, 612 F.2d 754, 762 (3d Cir. 1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

Plaintiff's allegation that he suffered a ruptured Achilles tendon is sufficient to meet the "serious medical need" prong of the test. See Hemmings v. Gorczyk, 134 F.3d 104, 109 (2d Cir. 1998) (ruptured Achilles tendon constitutes a serious medical need); Turner v. Kirsch, 2011 WL 1430300, at *5  (E.D.Pa. 2011) ("[W]e have no difficulty concluding that Plaintiff's injury [a torn Achilles tendon] is sufficiently severe to allow a reasonable jury to conclude that he had a serious medical need."); Hampton v. Hart, 2011 WL 2837407 (N.D.Ill. 2011) (same); Taylor v. Plousis, 101 F.Supp.2d 255, 262 (D.N.J. 2000) (a medical condition "which threatens a plaintiff's ability to walk, even on a non-permanent basis, falls within the ambit of a serious medical need.").

Plaintiff's allegations regarding the months-long delay in treatment and the refusal to treat, as well as the denial of surgery due to a non-medical reason, are sufficient to state a plausible claim under the Eighth Amendment.  See Durmer, 991 F.2d at 68; Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

Although Plaintiff has sufficiently pled an Eighth Amendment claim generally, he has not adequately alleged the personal involvement[4] of each of the named Defendants in the Eighth Amendment deprivation since these factual allegations implicate only Defendants Telega, Mowery and Baker.

The only allegation against Defendant John Doe is that he misdiagnosed Plaintiff on the day of the injury.  ECF No. 1, ¶ 14.  However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  "Neglect, carelessness or

---

[4]  Plaintiff cannot name an individual defendant based solely on supervisory liability, but, rather, he must show each defendant's personal involvement in the deprivation of his constitutional claims. This is true even if a named defendant is a supervisory prison official.  When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Section 1983 liability cannot be predicated solely on respondeat superior.  Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978)(superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

malpractice is more properly the subject of a tort action in the state courts." <u>Hampton v.</u>

<u>Holmesburg Prison Officials</u>, 546 F.2d 1077, 1081 (3d Cir. 1976*). <u>See also</u> <u>White</u>, 897 F.2d at

108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment.").[5]

Accordingly, the claim against Defendant John Doe will be dismissed for failure to state a claim.

 Likewise, the Eighth Amendment claim against Defendant Overton will also be

dismissed for failure to state a claim.  Non-medical prison officials, such as Defendant Health

Services Administrator Overton, are not

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [...] will not be chargeable with [...] deliberate indifference [under the Eighth Amendment].

<u>Spruill v. Gillis,</u> 372 F.3d 218, 236 (3d Cir. 2004) <u>quoting</u> <u>Durmer</u>, 991 F.2d at 69.  <u>See</u> <u>also</u>

<u>Foreman v. Bureau of Prisons</u>, 2007 WL 108457, at *5 (3d Cir.).  In other words, a non-medical

supervisory official may be held liable if there was "knowledge of 'malicious' and 'sadistic'

medical mistreatment."  <u>Henderson v. Bussanich</u>, 2006 WL 3761998, at *7 (M.D. Pa.),

<u>interpreting</u> <u>Spruill,</u> 372 F.3d at 236-237.

 In her capacity as the Health Services Administrator, Defendant Overton is not

deliberately indifferent if she failed to respond to Plaintiff's medical complaints while he was

under the care of medical professionals.  <u>See</u> <u>Spruill</u>, 37 F.3d at 256.  Defendant Overton's

---

[5]  "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights."  <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990) <u>citing</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982).  <u>See also</u> <u>Powell v.</u> <u>Symons</u>, 2010 WL 1485682, at *3 (M.D. Pa. 2010).

reliance on the opinion of medical professionals even as Plaintiff grieved his complaints about the alleged inadequacies in his medical treatment through the administrative remedy process[6] do not indicate that Overton possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon her.  See Henderson, 2006 WL 3761998.  Plaintiff's allegation that Overton's written response to his grievance contained false statements[7]  is equally ineffective to demonstrate that she knew about "malicious or sadistic" mistreatment.[8]  Accordingly, the deliberate indifference claims against Defendant Overton will be dismissed for failure to state a claim.

### D.  Failure to Train

Next, Plaintiff alleges that PHS, Overton, and Baker are liable because they failed to adequately train and supervise prison medical staff.

### 1)  Defendant PHS – corporate liability

---

[6]   If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783, at *14 (E.D. Pa. 2006).

[7]   "… Defendant Overton denied Plaintiff's grievance, filed on or about November 30, 2009, stating in part, that he had denied any medical problems while in Lawrence County nd furthermore that he had an MRI done, both statements of which were materially and knowingly false."  ECF No. 1, ¶ 44.

[8]   Furthermore, it is the not responsibility of the Health Services Administrator to order medical treatments sought by inmates. The responsibilities of the Health Services Administrator include managing the Health and Dental Departments of the prison, overseeing nursing staff, and overseeing independent contractors, such as PHS, Inc.  See Josey v. Beard, 2009 WL 1858250 (W.D. Pa.).

Generally, municipal liability[9] under § 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) citing Monell, 436 U.S. 658.  A plaintiff must show that the challenged incident resulted from an existing, unconstitutional policy attributable to the entity.  Oklahoma City v. Tuttle, 471 U.S. 818, 823-24 (1985).  Merely alleging that an entity has "engaged in a policy, custom, and practice" that violated plaintiff's federal rights is precisely the formulaic recitation of legal elements that the Twombly Court determined was insufficient to defeat a motion to dismiss.  See generally, Miller v. North Belle Vernon Borough, 2009 WL 112854 (W.D. Pa.).  While a plaintiff need not plead detailed facts regarding the alleged policy, custom, or practice, he must, in the very least, plead facts that: (1) put Defendants on notice with regard to the basis for the alleged policy, custom, or practice[10]; and (2) "show" that he is entitled to relief as a result of that policy, custom, or practice.  See Twombly, 550 U.S. at 554.  Plaintiff's Complaint contains no allegations that any specific policy of PHS led to any claimed injuries.  Instead, PHS is named as a defendant simply as the entity-in-charge.

Municipal (or entity) liability can also be based upon the entity's failure to adequately train its employees.  City of Canton v. Harris, 489 U.S. 378 (1989).  In order to establish

---

[9]  Monell involved a municipality, but its holding has routinely been extended to private corporations, like PHS, Inc. See Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003); Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992); Lux v. Hansen, 886 F.2d 1064 (8th Cir. 1989); Iskander v. Village of Forest Park, 690 F.2d 126 (7th Cir. 1982); Powell v. Shopco Laurel Co., 678 F.2d 504 (4th Cir. 1982).

[10]  A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Bielevicz, 915 F.2d at 850.

liability on a failure to train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Conn v. Bull, 307 Fed.Appx 631, at *3 (3d Cir. 2009) quoting Giles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005).[11]

Here, Plaintiff has not alleged any causal connection between PHS's alleged failure to provide any specific training to its employees, and/or how the lack of training "reflects deliberate indifference to whether the alleged constitutional deprivations occurred." See Conn. Accordingly, this claim should be dismissed as Plaintiff has failed to state a claim against PHS, Inc.

### 2)  Defendants Overton and Baker

The failure to train claim must be dismissed against Defendants Overton and Baker as such a claim is only available against entity-type defendants and not individuals. See Vacek v. Pennsylvania Judicial Conduct Board, 2010 WL 831000, at *7 n.8 (W.D. Pa.); Moriarty v. Rendell, 2009 WL 1458201, at *3 (M.D.Pa) ("The Monell standard, however, applies to the

---

[11]  In discussing the standard for failure to train in the context of a prison suicide, the Third Circuit explained:

> "the plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives."

Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) quoting Colburn v. Upper Darby Township ("Colburn II"), 946 F.2d 1017, 1029-30 (3d Cir. 1991).

liability of municipalities, not individuals.").  Defendants Overton and Baker cannot be held liable for the failure to train their subordinates as they have no constitutional duty to do so. Chinchello, 805 F.2d at 133 ("there is no affirmative duty to train, supervise and discipline subordinates.").

### E.  Punitive Damages

Finally, the Commonwealth Defendants move to dismiss Plaintiff's request for punitive damages.

In the context of a § 1983 claim, punitive damages can only be awarded where the alleged conduct is proven to be motivated by evil motive or intent, or when it involves recklessness or callousness to the federal protected rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1983).  Here, Plaintiff has sufficiently alleged that Defendants' conduct involves recklessness or callousness toward the Eighth Amendment rights of Plaintiff.  Defendants' motions shall be denied in this regard.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE ZEIGLER,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-203Erie** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PHS CORRECTIONAL HEALTH** | ) | |
| **CARE, INC., et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**O R D E R**

AND NOW, this 1st day of June, 2012;

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants PHS, Inc. and Telega [ECF No. 7] is granted in part and denied in part.  The Eighth Amendment claim will be allowed to proceed as Plaintiff has stated a plausible claim, while the failure to train claim against PHS, Inc. is dismissed.  Defendants' request to dismiss the claim for punitive damages is also denied.

IT IS FURTHER ORDERED that the motion to dismiss filed by Defendants Baker and Mowery [ECF No. 19] is granted in part and denied in part.  The Eighth Amendment claim against Baker and Mowery is sufficient to survive the motion to dismiss, while the failure to train claim against Baker is dismissed.  Defendants' request to dismiss the claim for punitive damages is also denied.

IT IS FURTHER ORDERED that the motion to dismiss filed by Defendant Overton [ECF No. 11] is granted.

IT IS FURTHER ORDERED that Defendant John Doe is dismissed from this action as Plaintiff has failed to state a claim against him.

The Clerk of Court is directed to terminate Overton and Doe as parties on the docket.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge