IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE ZEIGLER, | ) | |
| Plaintiff, | ) | Civil Action No. 11-203Erie |
| | ) | |
| v. | ) | |
| | ) | |
| PHS CORRECTIONAL HEALTH | ) | |
| CARE, INC., et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER[1]

**M.J. Susan Paradise Baxter**

This civil action was filed in this Court on September 14, 2011. Plaintiff, through his counsel, brought this civil rights action under 42 U.S.C. § 1983[2] alleging that his constitutional rights were violated during his incarceration as a parole violator at SCI Albion. Originally named as Defendants were: PHS Correctional Health Care, Inc.; Daniel Telega; Tammy Mowery; Maxine Overton, Dr. Mark Baker; and John Doe[3]-Medical Personnel. Plaintiff alleges that Defendants failed to provide him with adequate medical care in violation of his constitutional rights.

In response to the Original Complaint, Defendants filed motions to dismiss which were granted in part and denied in part. ECF No. 30.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 25, 28, and 29.

[2] Plaintiff does not raise a medical malpractice claim under state law. See ECF No. 27, page 17.

[3] Defendants Overton and Doe have previously been dismissed from this case. See ECF No. 30.

1

Plaintiff filed an Amended Complaint on July 13, 2013. ECF No. 36. Thereafter, Defendants filed an Answer and Defendant PHS, Inc. filed a partial motion to dismiss. ECF Nos. 37, 39.

Defendant PHS, Inc. moves to dismiss the corporate liability claim against it based upon Plaintiff's failure to state a claim upon which relief may be granted.[4] ECF No. 37. Plaintiff has filed a brief in opposition. ECF Nos. 40, 41. The issues are fully briefed and are ripe for disposition by this Court.

**A. Standard of Review - Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also

---

[4] Defendant also moves to dismiss a failure to train claim against PHS and a Fourteenth Amendment claim. See ECF No. 38. This Court does not read the Amended Complaint as attempting to set forth such claims.

McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> > First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

3

**B. The Allegations of the Amended Complaint**

In the Amended Complaint, Plaintiff alleges that on July 5, 2009, he injured his lower left leg while playing basketball. ECF No. 36, ¶ 13. Plaintiff went to the medical department where he was seen by Defendant John Doe and given an ice pack, Motrin, and crutches. Id. at ¶ 14. The following day, Plaintiff saw Defendant Telega to whom he described the injury, how it occurred, and the popping sound that he heard at the time of the injury. Telega diagnosed Plaintiff with a muscle strain. Id. at ¶ 16.

Over the next several weeks, Plaintiff continued to suffer severe pain, walking with a limp, his left foot discolored, and with a bulge on his Achilles tendon. Id. at ¶ 17. On July 28, 2009, Plaintiff saw Defendant Mowery and complained that he had been misdiagnosed. Plaintiff claims he tried to describe his condition to her, but that she cut him off making a sarcastic comment about his injury. Id. at ¶¶ 18, 19. Mowery denied that the injury could be a torn ligament or tendon and told Plaintiff she did not like his attitude and refused to further treat him. Id. at ¶ 20.

Plaintiff's injury did not improve and he continued to be in pain. Id. at ¶ 22. Around August 24, 2009, Plaintiff was transported to the Lawrence County Prison for a court hearing. Id. at ¶ 23. While there, Plaintiff saw a physician for the first time since his injury on July 5th. Id. at ¶ 25. The physician explained that he believed Plaintiff had ruptured his Achilles tendon. The physician ordered x-rays and explained that Plaintiff needed an MRI, as well as an exam by a specialist. Id. at ¶ 26.

Plaintiff was returned to SCI Albion without the MRI or specialist exam. Id. at ¶ 27. Around September 21, 2009, Plaintiff submitted an inmate request to Defendant Mowery

indicating that the physician in the county jail believed his injury was an Achilles tendon rupture. Plaintiff requested an exam by a specialist. Id. at ¶ 28.

On October 10, 2009, Plaintiff was examined by Defendant Telega. Id. at ¶ 32. Plaintiff related his experience with the doctor in the Lawrence County jail. Telega responded that the reason Plaintiff was not healed was because he was not using his crutches. Id. at ¶ 33. Telega examined Plaintiff indicating that there was no problem with the Achilles tendon, and ordered an x-ray. Id. at ¶ 34. Plaintiff requested a consultation with a specialist, instead of an x-ray. Id. at ¶ 35-36. Telega ordered the x-ray and told Plaintiff to return in two weeks. Id. at ¶ 37.

On October 26, 2009, Plaintiff saw Telega and Telega agreed to schedule a consultation with a specialist. Id. at ¶ 41. On November 6, 2009, Plaintiff consulted an orthopedic specialist via webcam. The specialist diagnosed Plaintiff with a ruptured Achilles tendon and recommended an MRI and surgery. Id. at ¶ 42. On November 16, 2009, Plaintiff was scheduled to leave SCI Albion the following day for the MRI, but the MRI was canceled by the provider. Id. at ¶ 43.

On December 8, 2009, Plaintiff was transported to an MRI clinic but the appointment was cancelled due to a broken MRI machine. Id. at ¶ 47. On December 24, 2009, Plaintiff underwent an MRI. Id. at ¶ 49. On January 22, 2010, Plaintiff had a consult with the orthopedic specialist via webcam. The specialist told Plaintiff that the MRI was not clear due to the formation of scar tissue due to the lapse of time from the date of the injury to the date of the MRI. The specialist recommended Plaintiff for surgery. Id. at ¶ 59.

On January 29, 2010, Plaintiff saw Defendant Dr. Baker who informed him that the recommendation for surgery had been denied because Plaintiff would be maxing out shortly and

released from prison. Id. at ¶ 60. Plaintiff claims that he was forced to endure unnecessary pain, suffering, and humiliation, as well as permanent and disfiguring injuries. Id. at ¶ 67-68.

As to the corporate liability of PHS, Inc., Plaintiff alleges:

> PHS's conduct … was part of a pattern, practice, policy and/or custom of deliberate indifference instituted by Defendant PHS and practiced at SCI Albion. More specifically, it is Defendant PHS's pattern, practice, policy, and/or custom that:
>
> a. The decision of whether or not to treat prisoners is based wholly or in part on how long the prisoner is going to be incarcerated at the facility and not on the basis of medical need and/or necessity;
>
> b. Prisoners who will be "maxing" out within a short period of time are denied necessary treatment solely because of the timeframe within which they will be incarcerated and not on the basis of medical need and/or necessity;
>
> c. Licensed physicians are not readily available to examine and/or treat inmates without repeated requests by inmates thereby resulting in unnecessary delays in treatment and/or diagnosis of injuries;
>
> d. Standard medically necessary medical procedures and services, such as MRIs, are not readily available to prisoners causing prolonged periods of delay in diagnosing and/or treating serious medical conditions;
>
> e. Standard medically necessary medical procedures and services which are scheduled off-site (outside of SCI Albion) are routinely canceled and rescheduled to later dates, resulting in prolonged periods of delay in diagnosing and/or treating serious medical conditions;
>
> f. Inmates are prevented from viewing their medical records, and are prevented from being informed as to the status of their medical diagnoses and/or treatment;
>
> g. Specialists are not available to physically examine prisoners to diagnose and/or treat serious medical conditions; and
>
> h. All decisions concerning whether an inmate warranted further medical treatment were delegated to designated non-physician personnel regardless of the nature and type of symptoms.

6

ECF No. 36, ¶ 71.

    **C. Corporate Liability of PHS, Inc.**

Defendant PHS moves for dismissal of the claim against it arguing that Plaintiff has failed to state a claim of corporate liability. This Court disagrees.

Generally, municipal liability under § 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) citing Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658 (1978). Similarly, "to establish liability regarding a private corporation, the plaintiff must show that the corporation, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." Winslow v. Prison Health Services, Inc., 2010 WL 571766, at *5 (M.D. Pa. Feb.12, 2010), aff'd, 2011 WL 167280 (3d Cir. Jan.20, 2011) (internal quotation omitted).

    The Monell Court held:

> Local governing bodies, therefore, can be sued directly under § 1983 … where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers…. [Suit can also lie based on] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

Id. at 690–91. See also Los Angeles County, Cal v. Humphries, ___ U.S. ___, 131 S.Ct. 447, 4561 (2010) ("The Court has also included the terms 'usage' and 'practice' as customs for which liability is appropriate. The length of this list of types of municipal action leads us here to use a shorthand term 'policy or custom,' but when we do so, we mean to refer to the entire list.").

7

In <u>Watson v. Abington Tp.</u>, 478 F.3d 144 (3d Cir. 2007), the Third Circuit described the ways in which a corporate liability claim can be established:

> Thus, there are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under <u>Monell</u>, a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Bielevicz</u>, 815 F.2d at 850, <u>quoting</u> <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff may establish a custom, on the other hand, "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." <u>Id</u>. citing <u>Andrews</u>, 895 F.2d at 1480. In other words, custom may be established by proving knowledge of, and acquiescence to, a practice. <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793-94 (3d Cir. 1989).
>
> It is clear under either route that "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz</u>, 915 F.2d at 850, <u>citing</u> <u>Andrews</u>, 895 F.2d at 1480. In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." <u>Andrews</u>, 895 F.2d at 1481.
>
> In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered. <u>Bielevicz</u>, 915 F.2d at 850, <u>citing</u> <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984). As we have explained, "[a] sufficiently close causal link between … a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." <u>Bielevicz</u>, 915 F.2d at 851, <u>quoting</u> <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987).

<u>Id</u>. at 155-56.

Despite Defendant's protestations to the contrary, Plaintiff has sufficiently pled that PHS has a custom of delaying medical treatment for non-medical reasons, and that delay in diagnosis and proper treatment caused Plaintiff to suffer additional pain, as well as a deformity from his improperly healed injury. While pleading these allegations of corporate liability against PHS is

8

far removed from proving them, Plaintiff's claim against PHS is sufficient to survive the motion to dismiss.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE ZEIGLER, | ) | |
| Plaintiff, | ) | Civil Action No. 11-203Erie |
| | ) | |
| v. | ) | |
| | ) | |
| PHS CORRECTIONAL HEALTH | ) | |
| CARE, INC., et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

**O R D E R**

AND NOW, this 20th day of February, 2013;

IT IS HEREBY ORDERED that the partial motion to dismiss filed by Defendant PHS, Inc. [ECF No. 37] is DENIED.

A Case Management Conference will be scheduled by separate order.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge